1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAIXON JOSE RAMIREZ TESARA, | CASE NO. C25-1723-KKE-TLF |
| Petitioner(s), | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CAMILLA WAMSLEY, et al., | |
| Respondent(s). | |

Petitioner filed a habeas petition asserting that his re-detention during an appointment with United States Immigration and Customs Enforcement ("ICE") violated his right to due process. Dkt. No. 1. The Court previously granted Petitioner's motion for temporary restraining order ("TRO") (Dkt. No. 2), and ordered the Government[1] to release him under the conditions of his expired parole agreement. Dkt. No. 19. The Court prohibited the Government from re-detaining Petitioner in connection with his existing removal order until the Court entered an order on the merits of Petitioner's habeas petition. *Id.*, Dkt. No. 24.

The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 25, 28, 30. Because the Court finds that Petitioner has established that his re-detention without a hearing violates his rights to due process, the Court will grant the habeas petition.

---

[1] In this order, the Court refers to the federal Respondents Camilla Wamsley, Kristi Noem, Pamela Bondi, and the United States Department of Homeland Security as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

# I.     BACKGROUND[2]

Petitioner is an asylum seeker who arrived in the United States after fleeing Venezuela in January 2024.  Dkt. No. 3-1.  He entered the country via Texas without inspection, was initially determined to be removable under 8 U.S.C. § 1225(b)(1), and found inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  Dkt. Nos. 3-1, 3-2.  Petitioner was processed as an expedited removal under Section 235(b) of the INA and transferred to ICE custody.  Dkt. No. 14 ¶ 4.  While there, Petitioner reported that he claimed fear of return to Venezuela.  Dkt. No. 3-2.  ICE referred Petitioner's fear claim to United States Citizenship and Immigration Services ("USCIS") for a "credible fear" interview.  *Id*.

A USCIS asylum officer interviewed Petitioner and found that his fear was credible, but that he had not established a significant possibility of eligibility for asylum.  Dkt. No. 3-2 at 5–6.  The Department of Homeland Security rescinded Petitioner's expedited removal order and placed him in removal proceedings under 8 U.S.C. § 1229a.  Dkt. No. 3-3.  Petitioner was subsequently released on humanitarian parole, as authorized under Section 212(d)(5)(A) of the INA.  Dkt. No. 3-4.  Petitioner's parole was valid for one year and set to automatically terminate unless otherwise suspended, and conditioned upon his compliance with release conditions.  *Id*.

After he was released from detention, Petitioner, his partner, and her children moved from Texas to Portland, Oregon.  Dkt. No. 4 ¶¶ 1, 5.  Petitioner applied for and received work authorization, found work, and became a father to a son born in the United States in early 2025.  *Id*. ¶ 5, Dkt. No. 5 ¶ 18.  In October 2024, Petitioner filed an application for asylum.  Dkt. No. 3-8.

---

[2] Although the background facts were previously set out in the Court's order granting Petitioner's motion for TRO (Dkt. No. 19), the Court summarizes them here in the interest of completeness.

1

2   At 2:48 p.m. on August 14, 2025—months after his parole expired without any extension

3   by ICE (Dkt. No. 14 ¶ 6)—Petitioner received a text message informing him that he had missed a

4   monitoring call on August 11,[3] and was ordered to appear in person that day at 2 p.m. at the parole

5   office in Portland, Oregon.  Dkt. No. 3-10, Dkt. No. 5 ¶ 9.  He quickly responded to that message

6   to request another appointment, because the 2 p.m. appointment had already passed before he

7   received the message.[4]  Dkt. No. 4 ¶ 7, Dkt. No. 5 ¶ 10.  He was told to appear on August 15, and

8   when he did, he was reminded not to miss appointments in the future.  Dkt. No. 4 ¶ 8, Dkt. No. 5

9   ¶ 13.  On his way home from that appointment, he received a call ordering him to appear at the

10  ICE office on August 18 for a check-in.  Dkt. No. 4 ¶ 8, Dkt. No. 5 ¶ 13.

11      When he arrived at that appointment on August 18, an ICE officer reviewed Petitioner's

12  records and discovered that he had 40 violations of his release conditions (missed check-ins and

13  visits).  Dkt. No. 14 ¶ 7.  Petitioner was then immediately detained and transferred to the Northwest

14  ICE Processing Center ("NIPC") in Tacoma, Washington.  *Id*. ¶ 8.  Petitioner was not allowed to

15  speak to his attorney during or after his detention.  Dkt. No. 4 ¶ 9, Dkt. No. 7.  His removal

16  proceedings are pending before an immigration judge at the NIPC.  Dkt. No. 14 ¶ 10.

17      Petitioner then filed a habeas petition along with a motion for TRO.  Dkt. Nos. 1, 2.  As

18  noted above, the Court previously granted Petitioner's motion for TRO and ordered the

19  Government to immediately release Petitioner from detention.  Dkt. No. 19.  After considering the

20  briefing on the habeas petition, the Court finds no reason to depart from the previous analysis in

---

[3] Petitioner states that he awaited the scheduled call on August 11 but it never occurred.  Dkt. No. 4 ¶ 6.

[4] Petitioner did not timely receive the message because his phone was not connected to cellular data at the time it was sent.  *See* Dkt. No. 3-10 at 8.  The Government contends that this evidence shows that Petitioner was aware of his repeated parole violations (Dkt. No. 30 at 2), but cites no evidence that supports that interpretation.  The evidence cited by the Government shows that Petitioner missed a message setting an appointment for August 14 due to lack of cellular data, but not that he was ever notified of 40 parole violations until after he was detained.

the TRO order: Petitioner's re-detention without notice and an opportunity to be heard violates his right to due process. Accordingly, the Court will grant the habeas petition.

## II.    ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir.

2022).  District courts have applied the *Mathews* test in similar circumstances since then.  *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

The parties agree that the three-part *Mathews* test applies here (Dkt. No. 25 at 12, Dkt. No. 28 at 7), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements, after first explaining its jurisdiction to review Petitioner's claim.

**A.    The Court Has Jurisdiction to Hear Petitioner's Claim.**

The Government argues that several provisions of 8 U.S.C. § 1252 preclude this Court's review of Petitioner's claims.  Dkt. No. 25 at 7.  First, the Government contends that 8 U.S.C. § 1252(g) bars review of Petitioner's claims because the claims arise from the Government's decision to commence removal proceedings.  *Id*.  Next, the Government argues that 8 U.S.C. § 1252(b)(9) bars review of Petitioner's claims because his claims challenge an "action taken … to remove an alien from the United States."  Dkt. No. 25 at 7.  Third, the Government argues that judicial review is precluded by 8 U.S.C. § 1252(e)(3), which bars challenges to the validity of the removal system.  Dkt. No. 25 at 7.

These arguments rest on a misreading of Petitioner's claims.  Petitioner's habeas petition does not seek review of the Government's decision to commence removal proceedings or to take an action to remove him from the United States, nor does he seek to challenge the removal process writ large.  His petition does not seek review of anything related to his removal proceedings.  Instead, he seeks judicial review of the procedure by which he was re-detained by an ICE officer without notice and a hearing before a neutral decisionmaker.  *See* Dkt. No. 1 at 11.  The Government has not presented any persuasive argument that the Court lacks the jurisdiction to review this constitutional claim, and the Court therefore rejects the Government's jurisdictional challenge.  *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (holding that challenges to

1    pre-removal detainment such as a claim for prolonged detention are judicially reviewable despite

2    Section 1252(b)(9)); *Munoz Materano v. Arteta*, __ F. Supp. 3d __, 2025 WL 2630826, at *10

3    (S.D.N.Y. Sep. 12, 2025) (finding that neither Section 1252(g) nor Section 1252(e)(3) strips a

4    court's jurisdiction to hear procedural challenges to re-detention of an individual previously

5    released from immigration detention).

6         Thus, having found jurisdiction to consider Petitioner's habeas petition, the Court now

7    considers the merits of the petition using the framework of the *Mathews* factors.

8    **B.    Petitioner Has a Protected Interest in His Liberty.**

9         Petitioner's interest in not being detained is "the most elemental of liberty interests[.]"

10   *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  That Petitioner was detained and transferred to a

11   facility in a different state, and remained in custody until he was temporarily released after this

12   Court granted his TRO motion, undoubtedly presents a deprivation of Petitioner's established

13   interest in his liberty.

14        The Government agrees that Petitioner has a *general* interest in his freedom, but argues

15   that he does not possess a separate or heightened liberty interest in the continuation of his

16   conditional release or participating in parole.  Dkt. No. 25 at 12.  The Government notes (*id*. at 13)

17   that "detention during deportation proceedings [is] a constitutionally valid aspect of the

18   deportation process" (*Demore v. Kim*, 538 U.S. 510, 523 (2003)), but this authority does not

19   indicate that detention *without due process* is constitutionally valid.  This Court affirms its prior

20   finding that Petitioner's interest in his freedom is constitutionally protected in this way (Dkt. No.

21   19 at 6), whether he was detained due to the expiration of his parole or because he violated his

22   parole conditions.

23        That the Government exercises discretion in determining whether to grant parole or extend

24   it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest, as

the Court previously found. Dkt. No. 19 at 7; *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

And although the Government asserts that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) (Dkt. No. 25 at 6–8), his status as a person who has been living and working in this country for nearly two years counsels against this expanded view of the INA as amended. *See, e.g.*, *Salgado v. Mattos*, No. 2:25-cv-01872-RJB-EJY, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues" (citation modified)). Indeed, although Petitioner was initially placed in expedited removal proceedings (Dkt. No. 3-1), he is now subject to standard removal proceedings under Section 1229a (Dkt. No. 3-3). *See, e.g.*, *Salgado*, 2025 WL 3205356, at *2 (explaining that in standard removal proceedings a noncitizen may either be detained or allowed to reside in this country). "The federal courts have uniformly held that § 1225(b) does not apply to noncitizens," like Petitioner, "who are present within the United States with the government's permission and have been residing in the interior of the United States for several years." *Alvarez v. Rivas*, No. CV 25-02943 PXS GMS (CDB), 2025 WL 2898389, at *22 (D. Ariz. Oct. 7, 2025) (collecting cases).

Finally, although the Government also argues that "Petitioner cannot claim that the government promised him ongoing freedom[,]" the Court does not read Petitioner's briefing to

make such a claim. Dkt. No. 25 at 13. Petitioner does contend, however, that the Constitution protects his interest in liberty by requiring due process if it is to be deprived, and the Court affirms its agreement with that proposition. *See* Dkt. No. 19 at 6–7.

**C.    The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court affirms its prior finding of a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing. Dkt. No. 19 at 8.

As described earlier in this order, Petitioner was arrested by ICE agents when he appeared for an August 18 appointment scheduled the day before. The Government contends that because the appointment was scheduled the day before, Petitioner was afforded "nearly twenty hours of notice that he was subject to re-detention." Dkt. No. 25 at 14. Petitioner was not notified that he was subject to re-detention, however; he was simply ordered to appear at an ICE office. *See* Dkt. No. 29-1 ¶13. Especially because Petitioner had already appeared at a parole office on August 15, and the ICE officer did not inform Petitioner at that time of any other violations and told him to keep all future appointments, Petitioner had no reason to suspect that he would be detained on August 18 when no additional violations had occurred since his last appointment.

And even if Petitioner did subjectively fear detention when he appeared on August 18, such an anxiety does not constitute notice or an opportunity to be heard. The Government submitted along with its briefing a list of Petitioner's alleged parole violations in 2024 and 2025 that the ICE agent considered when deciding to re-detain Petitioner, but the Government does not claim that Petitioner was made aware of this list at any time and even now acknowledges that the list does not identify the dates of the alleged violations. Dkt. No. 26, Dkt. No. 26-1. Petitioner disputes the accuracy of this list, emphasizing he was never informed that he was not in compliance with the

conditions of his parole until his detention in August 2025.  Dkt. No. 29-1 ¶¶ 2–12.  Even if the Government accurately[5] counted Petitioner's parole violations during the ICE review on August 18, it is clear that Petitioner was not provided notice and an opportunity to be heard on them if, even now, the Government cannot fully describe the violations that purportedly triggered Petitioner's re-detention.

Under these circumstances, the Court affirms its prior finding that the risk of erroneous deprivation of Petitioner's protected liberty interest is high.  Dkt. No. 19 at 8.  The factual disputes as to Petitioner's alleged parole violations should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court.  *See, e.g.*, *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025) (explaining that factual disputes as to violations of release conditions "must be adjudicated at a pre-deprivation hearing and they do not extinguish the liberty interest that grew when Respondents 'permitted [Petitioner-Plaintiff] to develop an out-of-custody life in the United States' over the past five years" (quoting *Pinchi*, 792 F. Supp. 3d at 1034 n.5)).

**D.     The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing.  Petitioner acknowledges that the Government has an interest in enforcing compliance with parole terms and detaining individuals who violate those terms, but argues that the Government must nonetheless "pursue this interest within the bounds of the Constitution."  Dkt. No. 28 at 13.

The Court affirms its prior finding (Dkt. No. 19 at 8) that the Government's interest in re-detaining non-citizens previously released without a hearing is "minimal": any administrative or

---

[5] Petitioner has documented a recent mistake in notices of violations, which further erodes the Court's confidence in Defendants' records.  *See* Dkt. No. 29-1 ¶ 18.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

1    financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous

2    deprivation of the liberty interest at issue.  *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970

3    (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to

4    take steps toward doing so; but its interest in doing so without a hearing is low.").

5         The Government argues that it has a "strong interest" in preventing noncitizens from

6    remaining in the United States in violation of the law, as well as in ensuring its orders are followed.

7    Dkt. No. 25 at 14.  Those interests are not threatened if a pre-deprivation hearing is required,

8    however.  That most of Petitioner's alleged violations occurred months before they were acted

9    upon, and Petitioner has had multiple appointments with ICE where any alleged violations could

10   have been addressed but were not, undermines any suggestion that the Government's interests

11   must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.

12        Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected

13   liberty interest in his continuing release from custody, and that due process requires that Petitioner

14   receive a hearing with proper notice before he can be re-detained.  *See Valdez v. Joyce*, __ F. Supp.

15   3d __, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Once immigration court proceedings

16   are underway, decisions regarding continued release are to be made by the Immigration Judge with

17   the protections of judicial due process.").

18

19

20

21

22

23

24

### III.    CONCLUSION

For these reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus. Dkt. No. 1.  Petitioner previously received the release from custody that he requests in his petition (Dkt. No. 19) and the Court now ORDERS that he cannot be re-detained until after a hearing (with adequate notice) on his alleged parole violations.

Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act no later than December 29, 2025.

Dated this 25th day of November, 2025.

Kymberly K. Evanson
United States District Judge